Gene Williams (SBN 211390)
GWilliams@InitiativeLegal.com
Mark P. Pifko (SBN 228412)
MPifko@InitiativeLegal.com
Theodore O'Reilly (SBN 267675)
TOReilly @InitiativeLegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone:  (310) 556-5637
Facsimile:   (310) 861-9051

Aaron D. Aftergood (SBN 239853)
aaron@aftergoodesq.com
The Aftergood Law Firm
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone:  (310) 551-5221
Facsimile:   (310) 496-2840

Attorneys for Plaintiffs Robert Plumleigh
and Thomas R. Hazard III

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PLUMLEIGH and THOMAS R. HAZARD III, individually and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CITY OF SANTA ANA; PAUL M. WALTERS; JOSEPH W. FLETCHER; REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC., a California corporation; REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:  SACV10-1332-CJC (RNBx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC. AND REDFLEX TRAFFIC SYSTEMS, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:     December 6, 2010<br>Time:    1:30 p.m.<br>Place:   Courtroom 9B |

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    FACTS AND PROCEDURE ................................................................2

III.   ARGUMENT ........................................................................................3

A.     Defendants' Motion To Dismiss Should Be Denied Because
       Plaintiffs' Claims Are Cognizable And Sufficiently
       Supported By Factual Allegations ...........................................3

B.     Hazard's Third Claim For Unjust Enrichment Must Not Be
       Dismissed .................................................................................4

       1.    Unjust Enrichment Is a Proper Basis for Restitution...................4

       2.    Plaintiffs' Payment of Fines Does Not Bar This
             Action Under *Heck v. Humphrey* .................................................5

       3.    Plaintiffs' Allegations That Redflex Violated Vehicle
             Code Section 21455.5(b) Are Sufficient ......................................8

       4.    Plaintiffs Have Alleged That They Conferred a
             Benefit on Redflex Defendants.......................................................9

       5.    The California Litigation Privilege Does Not Apply .................11

       6.    The Voluntary Payment Doctrine Does Not Bar
             Plaintiff Hazard's Claim...............................................................15

C.     Plaintiffs' Fourth Claim For Unfair Competition Must Not
       Be Dismissed.............................................................................16

       1.    Plaintiffs' UCL Allegations Are Adequately Detailed..............16

       2.    Plaintiffs Have Sufficiently Alleged That They
             Conferred a Benefit on Redflex Defendants ...............................17

       3.    Plaintiffs Have Adequately Alleged Causation...........................19

       4.    Plaintiffs' Payment of Fines Does Not Bar This
             Action...........................................................................................20

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1

       5.     The Litigation Privilege Does Not Apply to Plaintiffs'

2

           UCL Claim.................................................................................20

3

IV.    CONCLUSION ...............................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

3 **FEDERAL CASES**

4 *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th

5   Cir. 2001) ...................................................................................................4

6 *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).........................................................4

7 *Bagget v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007)....................4

8 *Barker v. Riverside County Office of Ed.*, 584 F.3d 821 (9th Cir. 2009) ....................4

9 *Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1988) ...........................................4

10 *Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ............................................4

11 *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885 (E.D. Cal. 2006) ............................12

12 *Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000) .......................................... 6, 7, 8

13 *Heck v. Humphrey*, 512 U.S. 477 (1994).......................................... *passim*

14 *Matoff v. Brinker Restaurant Corp.*, 439 F. Supp. 2d 1035 (C.D.

15   Cal. 2006) ..................................................................................................18

16 *Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299 (1986) .................................6

17 *Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058 (N.D.

18   Cal. 2004) ..................................................................................................12

19 *Spencer v. Kemna*, 523 U.S. 1 (1998) ...........................................................7

20 *Wallace v. Kato*, 549 U.S. 384 (2007)..........................................................5, 6

21 *Whitaker v. Garcetti*, 486 F.3d 572 (9th Cir. 2007) .................................................6, 7

22

23 **STATE CASES**

24 *Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864 (1998) ...................15

25 *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581 (1961) ............................. 15, 16

26 *Block v. Sacramento Clinical Labs, Inc.*, 131 Cal. App. 3d 386 (1982) ........... *passim*

27 *California Federal Bank v. Matreyek*, 8 Cal. App. 4th 125 (1992) ..........................11

28

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

*City of Los Angeles v. Meyers Brothers Parking System, Inc.*, 54 Cal. App. 3d 135 (1975) .................................................................8, 9

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983).................................................................16

*County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262 (1999) ..................................................................11

*CTC Real Estate Services v. Lepe*, 140 Cal. App. 4th 856 (2006) ..................... 10, 11

*Hagberg v. California Federal Bank FSB*, 32 Cal. 4th 350 (2004) ............. 13, 14, 15

*Heyman v. Franchise Mortgage Acceptance Corp.*, 107 Cal. App. 4th 921 (2003) ...................................................................14

*Juarez v. Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889 (2007)............................18

*Kesmodel v. Rand*, 119 Cal. App. 4th 1128 (2004)..........................................13

*Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612 (1993) ..........................17

*Kimmel v. Goland*, 51 Cal. 3d 202 (1990)........................................... 12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)............... 5, 18

*Kossian v. American Nat. Ins. Co.*, 254 Cal. App. 2d 647 (1967) ..........................11

*Kuehn v. Kuehn*, 85 Cal. App. 4th 824 (2000) ...............................................14

*Leonte v. ACS State and Local Solutions, Inc.*, 123 Cal. App. 4th 521 (2004) ....................................................................9

*Malloy v. Fong*, 37 Cal. 2d 356 (1951) ......................................................8

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004)..........................................4

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ........................4

*Michelson v. Hamada*, 29 Cal. App. 4th 1566 (1994).........................................8

*Newport Bldg. Corp. v. City of Santa Ana*, 210 Cal. App. 2d 771 (1962) ...............15

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990) ...................................................................13

*Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26 (1998) ....................17

*Salma v. Capon*, 161 Cal. App. 4th 1275 (2008) ............................................15

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007) ....................................18

*Trenfel v. Jasper*, 13 Cal. App. 4th 1694 (1993) ...........................................13

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) ........................ 18, 19

*Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296 (2000) ....................................14

**FEDERAL STATUTES**

Fed. R. Civ. P. 8 ...............................................................................................4

Fed. R. Civ. P. 15(a)(2) ....................................................................................9

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................... *passim*

Cal. Bus. & Prof. Code § 17204 ..................................................................19

Cal. Civ. Code § 47(b) ............................................................................. 13, 14

Cal. Civ. Code § 47(b)(2) ..............................................................................11

Cal. Civ. Code § 2299 ......................................................................................8

Cal. Civ. Code § 2307 ......................................................................................8

Cal. R. Ct. 4.104 ..............................................................................................7

Cal. R. Ct. 4.104(b) ..........................................................................................7

Cal. Veh. Code § 2144.5(c) .............................................................................9

Cal. Veh. Code § 21455.5(b) ................................................................. *passim*

Cal. Veh. Code § 41501 ...................................................................................7

Cal. Veh. Code § 41501(a)(1)...........................................................................7

Cal. Veh. Code § 41501(a)(2)...........................................................................7

**SECONDARY AUTHORITIES**

6 Bernard E. Witkin, *Summary of California Law* § 1016, p. 1105 (10th ed. 2005)............................................................................................................11

Rest. 2d Agency (1958) § 2, com. b, p. 13 ....................................................8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Plaintiffs Robert Plumleigh and Thomas R. Hazard III ("Plaintiffs") were

4 forced to pay hundreds of dollars out-of-pocket for a fines and a traffic safety

5 courses as a direct result of the unlawful actions of Defendants City of Santa Ana,

6 Chief Paul M. Walters, and Joseph W. Fletcher (collectively, "City Defendants")

7 and Defendants Redflex Traffic Systems (California), Inc. and Redflex Traffic

8 Systems, Inc. ("Redflex Defendants").  Acting oppressively and in reckless

9 disregard of Plaintiffs' rights, Defendants caused to be issued to Plaintiffs non-

10 warning, automated traffic camera citations without first instituting the required

11 thirty-day warning notice period under California Vehicle Code § 21455.5(b).

12 (First Amended Complaint ("FAC") ¶¶ 25 and 53-54.)

13      The causes of action in Plaintiffs' FAC, asserting claims under California's

14 Unfair Competition Law and for unjust enrichment, are sufficiently pleaded.  The

15 Court should let Plaintiffs' claims stand and deny the Redflex Defendants' Motion

16 to Dismiss (Doc. No. 26).  The FAC alleges that Redflex Defendants, along with

17 City Defendants, used automated traffic cameras to issue citations unlawfully to

18 Plaintiffs and the putative class.  Redflex Defendants, acting as the City

19 Defendants's agents, violated California Vehicle Code, section 21455.5(b) because

20 they did not properly institute the requisite thirty-day warning notice periods for

21 each and every intersection where a traffic camera system had been installed.

22 Plaintiffs were unlawfully issued citations, then forced and required to pay fines

23 and fees in order to obtain dismissals.  Furthermore, Plaintiffs conferred a benefit

24 on the Redflex Defendants because the Redflex Defendants' pay from City

25 Defendants was directly linked to the volume of citations it issued each month.

26 Accordingly, Redflex Defendants' Motion to Dismiss must be denied.  Plaintiffs

27 are entitled to present evidence to support their claims and proceed with their

28 efforts to certify a class.

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

## II.   FACTS AND PROCEDURE

In 2002 and 2003, City Defendants, in partnership with Redflex Defendants, began operating a series of unlawful floating traffic camera systems.  (FAC ¶¶ 26-28, 38-40.)  The first traffic camera system was installed in the City of Santa Ana in May 2003.  (FAC ¶ 39.)  Under California Vehicle Code, section 21455.5(b), traffic citations issued from traffic camera systems are not valid until a thirty-day warning notice period has first been completed.  (FAC ¶ 25.)  During the warning notice period, the camera system must issue warning notices, not citations.  (FAC ¶ 25.)  Only after an intersection's camera system issues warning notices for thirty days may citations be issued.  (FAC ¶¶  25, 46, 48.)

Although the Defendants initiated a thirty day warning notice period for their initial traffic camera system, Defendants over the next few years installed nineteen more traffic camera systems at sixteen different intersections without initiating thirty-day warning notice periods at any of them.  (FAC ¶¶ 40, 42, 46, 48, 49.)  Instead, in violation of law, Defendants issued thousands of citations to unwitting drivers each month.  (FAC ¶ 45.)  Indeed, twice California appellate courts have found that the red light program implemented by Redflex Defendants and the Defendants City violates the law for failure to provide the required warning notice periods.  (FAC ¶¶ 46, 48.)

The Redflex Defendants operate Santa Ana's traffic cameras pursuant to a written contract with the City of Santa Ana executed in 2002 (the "Agreement"). (FAC ¶ 28).  According to the Agreement, Redflex Defendants were responsible for nearly every aspect of the automated red light program, including:  designing, installing, and operating all traffic cameras; generating, processing and storing all violation data; handling all interactions with the public; training City officials in the most effective presentation of evidence in court; and enforcing and collecting fines from purported violators.  (FAC ¶¶ 27-34, 50.)  The Agreement expressly provided that Redflex Defendants would comply with Section 21455.5(b) by

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1  refraining from issuing citations during the mandatory "Warning period."  (FAC

2  ¶¶ 32, 37.)

3       The Agreement also set out Redflex Defendants' compensation.  Under the

4  Agreement, Redflex Defendants would be paid a fee only for traffic camera

5  systems that were "functional," which was defined as actively issuing traffic

6  tickets.  (FAC ¶ 35.)  The Agreement also contained a "Negotiable Fee Provision,"

7  which provided that if the City failed to recoup its costs in Redflex Defendants'

8  automated traffic light system, the City had the option of "renegotiating" Redflex's

9  compensation.  (FAC ¶ 36.)  The import of this provision was clear—that Redflex

10  Defendants were given a direct stake in the collection of fines from citizens.

11       Defendants issued Plaintiffs Robert Plumleigh and Thomas Hazard traffic

12  camera citations for alleged violations which occurred in 2008.  (FAC ¶¶ 53, 54.)

13  Both Plaintiffs paid over $400 in fines and traffic school fees.  (*Id.*)  The Superior

14  Court dismissed both Plaintiffs' traffic citation cases without convicting either of

15  them of any violation of law.  (*Id.*)

16       On September 3, 2010, Plaintiffs filed a Complaint against Defendants.

17  (Doc. No. 1.)  On October 12, 2010, Plaintiff filed the present First Amended

18  Complaint.  (Doc. No. 18.)  Plaintiff Hazard asserts a claim for Unjust Enrichment,

19  requesting restitution from the Redflex Defendants.  (FAC ¶¶ 73-80, 12-14.)  In

20  addition, both Plaintiffs allege that Redflex Defendants violated California's

21  Unfair Competition Law, California Business and Professions Code, sections

22  17200 *et seq*. ("UCL").  (FAC ¶¶ 81-86.)

23  **III.   ARGUMENT**

24       **A.    Defendants' Motion To Dismiss Should Be Denied Because**

25             **Plaintiffs' Claims Are Cognizable And Sufficiently Supported By**

26             **Factual Allegations**

27       Generally, a plaintiff is entitled to present evidence to support a claim if the

28  claim satisfies notice pleading requirements and plausibly shows that the plaintiff

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

is entitled to relief.  *See* Fed. R. Civ. P. 8; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Accordingly, motions to dismiss are disfavored and are rarely granted.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  In reviewing a motion to dismiss, the court must (1) construe the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in plaintiff's favor, and (2) accept all well-pleaded factual allegations as true.  *See Iqbal*, 129 S. Ct. at 1950; *Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).  Furthermore, the court must consider only the claims and nothing beyond the face of the complaint.  *See*, *e.g.*, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If any claims are unclear or implausible, dismissal without leave to amend is an "extraordinary" option, at best.  *Broam*, 320 F.3d at 1028.  Instead, the court should grant leave to amend.  *Id.*  In most instances, the court should "keep the case moving."  *Bennett*, 153 F.3d at 518.

**B.      Hazard's Third Claim For Unjust Enrichment Must Not Be Dismissed**

**1.      Unjust Enrichment Is a Proper Basis for Restitution**

Though unjust enrichment may not be a distinct cause of action under California law, it is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.  *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *Bagget v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007).  Quasi-contract can serve as the basis for the equitable remedy of restitution where one party obtains a benefit which he may not justly retain.  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004).

Here, Plaintiff Hazard has alleged sufficient facts to support his unjust enrichment claim because he alleges that Redflex Defendants unlawfully aided and abetted the City Defendants' illegal citations, in direct violation of Section 21455.5(b).  (FAC ¶ 17.)  Plaintiff Hazard further alleges that Redflex Defendants

1    nevertheless received and retained a portion of the money collected.  (FAC ¶¶ 36,

2    77.)  If the Court wishes to re-characterize Plaintiff Hazard's claim, it is

3    cognizable as a claim for breach of quasi-contract.  Therefore, pursuant to a quasi-

4    contract theory, Plaintiff Hazard may obtain restitution, or the "disgorgement of

5    the profits that the defendant had received as the result of its wrongful conduct."

6    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146-47 (2003).

7            **2.    Plaintiffs' Payment of Fines Does Not Bar This Action**

8                    **Under *Heck v. Humphrey***

9            Redflex Defendants argue that Plaintiffs may not proceed with their claims

10   because of the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477

11   (1994).  Redflex's argument, however, is misplaced.  *Heck v. Humphrey* does not

12   apply because Plaintiffs have suffered no convictions.  (FAC ¶¶ 53, 54.)  Under

13   *Heck*, civil claims that amount to collateral attacks on criminal convictions do not

14   accrue until the convictions are overturned or reversed in some way.   512 U.S. at

15   486-87.  Plaintiffs allege that their traffic camera cases were dismissed after they

16   paid their fines and attended traffic school.  (FAC ¶¶ 53, 54.)  Thus, *Heck* is

17   inapplicable.  Yet even if Plaintiffs' payment of fines were the equivalent of

18   convictions (which they are not), the dismissal of Plaintiffs' cases still provides an

19   exception to the *Heck* bar.

20           *Heck*'s bar on civil claim accrual only applies when a plaintiff has been

21   convicted and the plaintiffs' claims, if successful, would imply that the conviction

22   was invalid.  *Wallace v. Kato*, 549 U.S. 384, 393 (2007).  Under *Heck*, convicted

23   plaintiffs may recover Section 1983 damages for their unconstitutional criminal

24   convictions if their convictions have been reversed, expunged, declared invalid by

25   an authorized state tribunal, or called into question by the issuance of a writ of

26   habeas corpus.  512 U.S. at 486-87.  Historically, convicted plaintiffs have been

27   barred from using common law tort suits to attack their outstanding convictions.

28   *Id.* at 484-85 & n.4.  Finality and the risk of conflicting judgments were major

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    concerns.  *Id.* at 484-85.  Section 1983 actions are analogous to common law tort

2    suits.  *Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299, 305 (1986).

3    Accordingly, *Heck* held that convicted plaintiffs cannot use Section 1983 to

4    accomplish what they could not accomplish with a tort suit at common law.  *See*

5    512 U.S. at 483-87.

6          However, it is well-established that plaintiffs who have not suffered

7    convictions may recover damages for unconstitutional criminal proceedings.

8    *Wallace*, 549 U.S. at 393; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007).

9    In *Whitaker*, several plaintiffs brought Section 1983 claims against the government

10   for the government's failure to disclose wiretaps.  *Whitaker*, 486 F.3d at 576-79.

11   The government used the wiretaps to prosecute and convict all but one of the

12   plaintiffs.  *Id.*  Thus, the court held that *Heck* was "inapplicable to [the] claims" of

13   the plaintiff who had not been convicted.  *Id.* at 581.

14         Furthermore, Ninth Circuit authority is clear that if a plaintiff's criminal

15   case is dismissed, as with Plaintiffs here, the plaintiff may recover damages for

16   unconstitutional proceedings.  *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th

17   Cir. 2000), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).

18   In *Harvey*, the government entered plaintiff's business and seized gaming devices

19   used for gambling.  *Id.* at 1010.  The plaintiff was charged with illegal possession

20   of gaming devices.  *Id.*  The government later dismissed plaintiff's criminal case

21   after a change in the law occurred, legalizing possession of the gaming devices in

22   question.  *Id.* at 1011, 1016.  The plaintiff eventually filed a Section 1983 claim,

23   seeking to recover damages for unreasonable search and seizure.  *Id.*  The court

24   held that allowing plaintiff's claim to proceed after his criminal case was

25   dismissed "will avoid the potential for inconsistent determinations on the legality

26   of a search and seizure in the civil and criminal cases and will therefore fulfill the

27   *Heck* Court's objectives of preserving consistency and finality, and preventing 'a

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1   collateral attack on [a] conviction through the vehicle of a civil suit.'"  *Id.* at 1016

2   (*quoting Heck*, 512 U.S. at 484-85).

3         Under California Vehicle Code, section 41501, defendants who are cited for

4   traffic violations may be granted dismissal after attending traffic school.  *Id.* ; *see*

5   *also* Cal. R. Ct. 4.104.  Court clerks may grant pretrial diversion to traffic school.

6   Cal. R. Ct. 4.104(b).  The court may continue the proceedings and, "in

7   consideration for attendance" at traffic school, "dismiss the complaint[.]"  Cal.

8   Veh. Code § 41501(a)(1)-(2).

9         Here, Plaintiffs' claims are valid under *Heck* because Plaintiffs suffered no

10  convictions and the cases against them were dismissed.  (FAC ¶¶ 53, 54.)  In the

11  absence of a conviction, *Whitaker* held that "the *Heck* Court's objectives of

12  preserving consistency and finality, and preventing 'a collateral attack on [a]

13  conviction through the vehicle of a civil suit'" are not implicated.  *Harvey*, 210

14  F.3d at 1016, (*quoting Heck*, 512 U.S. at 484-85).  Therefore, *Heck* is inapplicable

15  to Plaintiffs claims here.[1]  Plaintiffs' claims are cognizable and Redflex

16  Defendants' Motion to Dismiss must be denied.

17        Alternatively, even assuming Plaintiffs' payments of fines were equivalent

18  to convictions, Plaintiffs' allegations that their cases were dismissed provide an

19

20     [1] *Heck* may be inapplicable for a further reason.  In *Spencer v. Kemna*, 523
    U.S. 1 (1998), five justices took the position that a plaintiff who is not "'in custody'

21  may bring a § 1983 action establishing the unconstitutionality of a conviction . . .
    without being bound to satisfy a favorable-termination requirement that it would be

22  impossible as a matter of law for him to satisfy."  *Id.* at 21.  (Souter, J., O'Connor,
    J., Ginsburg, J., and Breyer, J., concurring); *cf. id.* at 25 n.8 (Stevens, J., dissenting)

23  ("Given the Court's holding that petitioner does not have a remedy under the habeas
    statute, it is perfectly clear, as Justice Souter explains, that he may bring an action

24  under § 1983.").  Defendants may argue in reply that Justice Souter's opinion in
    Spencer is not a holding.  However, many Circuit and District court cases have

25  followed it or adopted its reasoning.  *Compare Jenkins v. Haubert*, 179 F.3d 19, 25-
    26 (2d Cir. 1999), *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999), *White v.*

26  *Phillips*, 34 F. Supp. 2d 1038, 1041-42 (W.D. La. 1998), *Johnson v. Freeburn*, 29 F.
    Supp. 2d 764, 775 (E.D. Mich. 1998) and *Zupan v. Brown*, 5 F. Supp. 2d 792, 797

27  (N.D. Ill. 1998) *with Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998).  Here,
    Plaintiffs are not in custody.  Thus, as found by the five Spencer justices, *Heck* is

28  inapplicable to Plaintiffs.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

exception to the *Heck* bar.  If a conviction is reversed or dismissed, then there are no concerns regarding finality or conflicting judgments.  In *Harvey*, a dismissal of the plaintiff's criminal case made it possible for plaintiff to pursue his civil claims under Section 1983.  Furthermore, Plaintiffs' allegations define the class as all persons "who paid [their] citations, thereby earnings dismissals."  (FAC ¶ 20.)  Thus, if dismissal allowed the *Harvey* plaintiff's claims to accrue, then the dismissals here allow Plaintiffs' claims to proceed.

### 3. Plaintiffs' Allegations That Redflex Violated Vehicle Code Section 21455.5(b) Are Sufficient

Redflex Defendants argue that Plaintiff Hazard's unjust enrichment claim may not proceed against it because Redflex Defendants are private companies, and not a local jurisdiction.  However, Redflex Defendants may be liable for a violation of Section 21455.5(b) because they acted as the City's agent.  Normally, agency is created by an express contract or authorization.  *See* Cal. Civ. Code §§ 2299, 2307.  However, agency may also be implied from the circumstances and conduct of the parties.  *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1579 (1994).

> Whether a person performing work for another is an agent . . . depends primarily upon whether the one for whom the work is done has the legal right to control the activities of the alleged agent.  It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent.  The existence of the right of control and supervision establishes the existence of an agency relationship.

*Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951).  Moreover, agency and independent contractorship are not mutually exclusive legal categories.  *City of Los Angeles v. Meyers Brothers Parking System, Inc.*, 54 Cal. App. 3d 135, 138 (1975) (citing Rest. 2d Agency (1958) § 2, com. b, pp. 13-14).

Here, Plaintiffs' allegations show that Redflex Defendants operated under the City's control.  The Agreement between Redflex Defendants and the City Defendants requires that the all violation data be stored on the Redflex system, that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

the City Defendants be provided all such data to review, that the City be allowed to access Redflex's computer files "through a virtual private network in encrypted format," that and that City be allowed to "renegotiate" the Agreement if it realizes insufficient citation revenue.  (FAC ¶¶ 30, 31, 36.)  These allegations support a finding of control sufficient to create an agency relationship.  *Leonte v. ACS State and Local Solutions, Inc.*, 123 Cal. App. 4th 521, 528 (2004) (concluding that similar agreement between municipality and private red light camera contractor evidenced control of contractor by municipality).  And, as noted above, an agent may also be an independent contractor, and vice versa.  *Meyers Brothers*, 54 Cal. App. 3d at 138.  Indeed, the Vehicle Code itself requires that an agency relationship be formed whenever the red light camera function is delegated to a private entity.  *See* Cal. Veh. Code § 2144.5(c) (requiring that government agency retain control over the guidelines to be implemented in issuing citations, treatment of confidential information, and performance of certain "day-to-day functions" including the inspection and calibration of equipment and locations of signals).

Based on Plaintiffs' allegations, it can be reasonably inferred that City Defendants had the requisite level of control over and supervision over Redflex Defendants to establish an agency relationship.  Redflex Defendants present no authority suggesting that it cannot be liable under Section 21455.5(b) in this way.  For this reason, Redflex's argument fails.[2]

### 4. Plaintiffs Have Alleged That They Conferred a Benefit on Redflex Defendants

Redflex Defendants argue that Hazard's unjust enrichment claim should be dismissed because Plaintiff Hazard has not alleged that he conferred a benefit on the Redflex Defendants.  Redflex Defendants are incorrect.  As an initial matter,

---

[2] Nevertheless, should the Court determine that express allegations of agency are necessary, Plaintiffs should be permitted to amend their FAC under Fed. R. Civ. P., Rule 15(a)(2) to allege expressly an agency relationship between the City and Redflex.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   Plaintiff Hazard *has* pleaded that he directly conferred a benefit on Redflex
2   Defedants.  As Redflex Defendants acknowledge, Plaintiff Hazard alleged that
3   "Defendants" collected fines from "non-warning automated traffic camera tickets."
4   (FAC ¶ 50.)  However, Redflex Defendants ignore that Plaintiff Hazard also
5   alleged that Redflex Defendants' contract with the City Defendants contained a
6   "Negotiable Fee Provision," providing that the City Defendants could renegotiate
7   their contract with Redflex Defendants if they did not recoup the costs incurred in
8   connection with installing and operating the new cameras.  (FAC ¶ 36).  Because
9   Redflex Defendants' remuneration is, under the Agreement, tied directly to the
10  volume of tickets distributed and amount of money collected, the Negotiable Fee
11  Provision provides Redflex Defendants with a direct stake in the issuance and
12  collection of traffic tickets.  Furthermore, as alleged in the FAC, under the
13  Agreement, Redflex Defendants only were paid a fee only for traffic camera
14  systems that were "functional."  (FAC ¶ 35.)  Under the Agreement, a traffic
15  camera system was functional only if it was actively issuing traffic tickets.  (*Id*.)
16  Therefore, the under the Agreement, Redflex Defedants were only compensated
17  for traffic camera systems that were issuing citations (not warnings), and thus, they
18  received a direct monetary benefit from issuing citations and not complying with
19  the requisite thirty-day warning notice period.

20      Moreover, Plaintiff Hazard alleges that he paid fines to the City Defendants
21  "who in turn, paid Redflex Defendants."  (FAC ¶ 77.)  Therefore, Plaintiff Hazard
22  has also alleged that he indirectly conferred a benefit on Redflex Defendants.
23  Benefits conferred indirectly are also cognizable as a basis for an unjust
24  enrichment claim under California law.  For instance, in *CTC Real Estate*
25  *Services v. Lepe*, 140 Cal. App. 4th 856, 861 (2006) the plaintiff—an identity theft
26  victim—recovered money from a foreclosure sale surplus where the identity thief
27  had taken out the loan used to buy foreclosed property in the plaintiff's name.  In
28  discussing unjust enrichment, the court noted that "[t]he mere fortuity that the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1 wrongdoer has disappeared without receiving the surplus and is not subject to legal

2 action should not, as a matter of equity, preclude Ms. Lepe from being able to

3 recover the funds not in the possession of the identity thief." Indeed, the *CTC*

4 court stated:

> "One of the 'Underlying Principles' of the Restatement [of Restitution (First) § 1] is that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' This is in harmony with the opening sentence: 'The Restatement of this Subject deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss.' (Rest., Restitution, p. 1.)"

10 *Id.* (citing 6 Bernard E. Witkin, *Summary of California Law* § 1016, p. 1105 (10th

11 ed. 2005)). That money was not paid directly to the defendant by the plaintiff, but

12 was, instead, paid to an intermediary first, is of no moment. *County of Solano v.*

13 *Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1278 (1999) (citing

14 *California Federal Bank v. Matreyek*, 8 Cal. App. 4th 125, 132 (1992)) ("For a

15 benefit to be conferred, it is not essential that money be paid directly to the

16 recipient by the party seeking restitution."); *Kossian v. American Nat. Ins. Co.*, 254

17 Cal. App. 2d 647, 650 (1967) ("doctrine of unjust enrichment [is] a theory which

18 can, in some instances, have validity without privity of relationship"). Here, even

19 if Plaintiffs had alleged only that they paid money to Redflex Defendants

20 indirectly, Redflex Defendants are accountable to Plaintiffs because, otherwise,

21 Redflex Defendants would unjustly benefit, and Plaintiffs would unjustly suffer

22 loss.

### 5.   The California Litigation Privilege Does Not Apply

23

24       Redflex Defendants state that they are immune from liability under

25 California Civil Code, section 47(b)(2) for "publications or broadcasts" made in

26 connection with a "judicial proceeding" or "official proceeding authorized by

27 law." Redflex Defendants argue that their role in operating a network of

28 automated traffic cameras for the City, for profit, is akin to a citizen's who

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   contacts the police to report suspected criminal activity.  Redflex Defendants are

2   mistaken.

3         The litigation privilege is intended to protect communications in connection

4   with litigation or some other judicial or quasi-judicial proceeding.  It extends to

5   any communication that bears "some relation to any ongoing or anticipated

6   lawsuit."  *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006).  It

7   is not intended to apply to the collection of evidence for possible later use.

8   *Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058, 1065 (N.D. Cal.

9   2004) (noting that the "mere potential or bare possibility that judicial proceedings

10  might be instituted in the future is insufficient to invoke the litigation privilege

11  under CC § 47.").  This is especially so where, as here, the collection of evidence

12  was itself unlawful.  *See Kimmel v. Goland*, 51 Cal. 3d 202, 211 (1990) (holding

13  that litigation privilege did not bar suit for invasion of privacy by the illegal

14  recording of confidential telephone conversations done for the purpose of

15  gathering evidence to be used in future litigation).  Here, Redflex Defendants

16  collected evidence not as part of an ongoing or imminent judicial proceeding.

17  Indeed, Redflex Defendants expressly disclaim that they had any knowledge or

18  part of the decision to issue traffic tickets or initiate any official proceedings.  (*See*

19  Redflex Defendants' Motion to Dismiss at 10:2-3 ("Redflex provides th[e] [traffic]

20  information to the City, who then decides whether to issue citations and prosecute

21  the case."))

22        Redflex Defendants also rely on inapposite case law.  Principally, Redflex

23  Defendants rely on *Block v. Sacramento Clinical Labs, Inc.*, 131 Cal. App. 3d 386,

24  394 (1982), in which the court analyzed the applicability of the litigation privilege

25  to professional malpractice claims.  The *Block* court found that where the crux of

26  the action was alleged negligent publication of an allegedly negligently prepared

27  report by a professional (a coroner) in connection with the district attorney's

28  investigation of possible criminal charges, the privilege barred the plaintiff from

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   pursuing the action.  However, in stark contrast to this case, all of the actions taken

2   in *Block* that were sued upon were performed in preparation for a specific

3   litigation.  Because Redflex Defendants' evidence-collection was not performed in

4   connection with any legislative, judicial, or official proceeding, the Section 47(b)

5   litigation privilege does not apply.

6        Moreover, the litigation privilege of Section 47(b) applies only to

7   communications, and not to pure conduct.  *See*, *e.g.*, *Pacific Gas & Electric Co. v.*

8   *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1132 n.12 (1990).  In *Kimmel*, 51 Cal. 3d at

9   211, the court characterized the defendant's surreptitious recording of a

10  confidential conversation as a non-communicative act distinct from immune

11  communications such as publications or broadcasts, and held that Section 47(b) did

12  not apply.  *See also Kesmodel v. Rand*, 119 Cal. App. 4th 1128 (2004) (holding

13  that a wrongful citizen's arrest is conduct, not communication in an official

14  proceeding authorized by law, and thus Section 47(b) provides no immunity from

15  liability for false imprisonment).

16       The relevant test is whether conduct or communication predominates in the

17  plaintiff's pleadings.  *Trenfel v. Jasper*, 13 Cal. App. 4th 1694, 1713 (1993).  Here,

18  Plaintiff Hazard's allegations clearly focus on Redflex Defendants' **conduct**:

19  Redflex's having "designed, installed, and operated" the automated traffic camera

20  system (FAC ¶¶ 12, 13, 27); the installation of approximately twenty traffic

21  cameras (FAC ¶ 29); printing and mailing citations (FAC ¶ 32); processing

22  complaints and questions from the public (FAC ¶ 33); and training City personnel

23  in presentation strategies for the courtroom (FAC ¶ 34).  In fact, there is not a

24  single "communication" by Redflex Defendants alleged in the entire FAC.

25  *Compare with Block*, 131 Cal. App. 3d at 387 (publication of the coroner's report

26  falsely asserting high aspirin level in the decedent's blood as an "injurious

27  falsehood" and the communication at the heart of plaintiff's case); *Hagberg v.*

28  *California Federal Bank FSB*, 32 Cal. 4th 350, 356 (2004) (telephonic report to

police falsely accusing customer of attempting to negotiate a fake check held a

privileged communication); *and Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th

1296, 1303 (2000) (man's false report to the DMV that his estranged wife was

unfit to drive due to drug use privileged).  The instant case simply does not fit

within the Section 47(b) model as there is no "communication" at issue.  Because

it is only the Redflex Defendants' conduct that is at issue in Plaintiffs' FAC,

Section 47(b) does not apply.

Finally, the litigation privilege as codified in Section 47(b) applies only to

defamation claims or torts, however labelled, "that are predicated upon the

publication in protected proceedings of an injurious falsehood."  *Block*, 131 Cal.

App. 3d at 391.  However, Plaintiff Hazard's unjust enrichment claim is not a tort,

nor is it based, to any extent, on the publication of an injurious falsehood.  Hazard

does not allege that there was anything "false" about Redflex's conduct.  Rather,

Plaintiff Hazard alleges that Redflex Defendants—in conjunction with the City

Defendants—failed to comply with the California Vehicle Code's warning notice

requirements.

Thus, because Section 47(b) applies only to defamation or tort claims

predicated on the communication of an "injurious falsehood," it cannot bar a claim

for unjust enrichment.  *See*, *e.g.*, *Hagberg*, 32 Cal. 4th at 360 (holding that Section

47(b) "bars all **tort** causes of action, except a claim for malicious prosecution.");

*Heyman v. Franchise Mortgage Acceptance Corp.*, 107 Cal. App. 4th 921, 925 n.2

(2003) ("Although the litigation privilege contained in CC § 47(b) bars a direct

action for fraud committed in a judicial proceeding, it does not apply to an

equitable action to set aside a settlement agreement for extrinsic fraud."); *Kuehn v.

Kuehn*, 85 Cal. App. 4th 824, 834 (2000) ("the absolute litigation privilege of CC §

47(b) bars derivative **tort** actions and applies to all **torts** other than malicious

prosecution, including fraud, negligence, and negligent misrepresentation.");

*Block*, 131 Cal. App. 3d at 391 ("The privilege attaches where the **tort**, however

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

denominated, is one for **defamation**.") (emphasis added).  It is significant to note that **not one** of Redflex's cited cases applied the litigation privilege to immunize a party from an unjust enrichment claim—or any other equitable claim.  *See Hagberg*, 32 Cal. 4th at 357 (false arrest, false imprisonment, negligence, intentional infliction of emotional distress, slander and discrimination claims); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1281 (2008) (claims for conversion, trespass, and intentional interference with prospective economic advantage); *Block*, 131 Cal. App. 3d at 392 (claim of professional negligence based on negligent communication of an injurious falsehood).

### 6.   The Voluntary Payment Doctrine Does Not Bar Plaintiff Hazard's Claim

The voluntary payment doctrine does not bar Hazard's unjust enrichment claim because he alleged that he was coerced into paying his fine.  That is sufficient under the controlling case law.

Whether a payment is considered voluntary or involuntary is dependent upon "the circumstances attendant upon payment and a consideration of the consequences which might follow upon non-payment."  *See Newport Bldg. Corp. v. City of Santa Ana*, 210 Cal. App. 2d 771, 778 (1962).  Coercion can be found in instances where a reasonable person finds that "in order to preserve his property . . . it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain."  *Id.*; and *see Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 874 (1998) (claim for restitution lies for payment of "excessive or unnecessary fees and costs").  Moreover, "[I]t is elementary that an excessive payment made in ignorance of the fact that it is excessive is recoverable."  *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961).  Whether the payment of the fine was made voluntarily or through mistake "depend[s] upon the intentions of [P]laintiff in making them," and is to be judged "in light of the facts that were known" to

1  Plaintiff.  *Id*. at 587.  "Means of knowledge [is] not the equivalent of knowledge."
2  *Id*.

3    Here, as Redflex Defendants acknowledge, Plaintiff Hazard alleges that he
4  was "forced and required to pay" his fine.  (FAC ¶53.)  Embedded in Hazard's
5  allegation is that, when he paid his ticket:  (1) he had no actual knowledge that he
6  did not owe the fine because of Redflex Defendants' violation of the Vehicle Code
7  and (2) Plaintiff Hazard paid his fine only to avoid the burdensome process of
8  fighting the citation and the threat of facing possible criminal consequences.
9  Therefore, the voluntary payment doctrine does not bar Plaintiff Hazard's claim.

10    **C.**  **Plaintiffs' Fourth Claim For Unfair Competition Must Not Be**
11      **Dismissed**

12      **1.**  **Plaintiffs' UCL Allegations Are Adequately Detailed**

13    Plaintiffs have adequately alleged Redflex Defendants' violation of Section
14  21455.5(b) for the reasons explained above.  However, even if they had not done
15  so, the violation of Section 21455.5(b) would still be a proper basis for Plaintiffs'
16  UCL claim under the "unlawful" prong.  The term "unlawful business practice"
17  incorporates by its very terms almost every other state or federal law, and because
18  the UCL provides for private enforcement, the UCL functions as a universal
19  private right of action, allowing private plaintiffs to sue under statutes for which
20  no private right of action otherwise exists.  *Committee on Children'sTelevision,*
21  *Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210-211 (1983).  Therefore, because
22  Plaintiffs have adequately alleged that tickets were issued without complying with
23  the warning period, violating Section 21455.5(b), it is unnecessary that that the
24  statute provide a private right of action against Redflex Defendants.

25    Further, Plaintiffs' UCL claim was adequately alleged in the FAC.  As an
26  initial matter, Plaintiffs need not have pleaded their UCL claim with particularity.
27  Indeed, Redflex neglects to mention a 1998 California Supreme Court decision
28  holding that, "contrary to the suggestion . . . that the court may require fact-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

specific pleading [in UCL claims], the well-settled rule is otherwise except in pleading fraud." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 46-47 (1998).  For this reason alone, Plaintiffs' UCL claims must stand.

Moreover, Redflex Defendants erroneously cite *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612 (1993) to support their argument that Plaintiffs have not adequately alleged their UCL claims.  *Khoury*, however, is inapposite.  In *Khoury*, the plaintiff failed to identify any predicate statue as the basis of his UCL claim, and failed even to state which prong of Section 17200 she was proceeding under.  The totality of the *Khoury* plaintiff's UCL allegations were:  "Defendants breached this statute by refusing to sell [the JPM products] to plaintiff, for the purpose of ruining and interfering with his beauty and supply business, with the effect of misleading plaintiff's customers."  *Khoury*, 14 Cal. App. 4th at 619.  In stark contrast, Plaintiffs' FAC identifies the predicate statute that Redflex Defendants violated—Section 21455.5(b).  (FAC ¶¶ 25, 78.)  In addition, unlike Khoury's generic description of conduct having a "misleading effect," Plaintiffs describe precisely the unlawful conduct at issue: the collection of fines for non-warning automated traffic camera citations in violation of Section 21455.5(b).[3]  (FAC ¶¶ 40-49).  Because *Khoury* is clearly distinguishable and Redflex cites no other authority, this argument fails.

### 2.    Plaintiffs Have Sufficiently Alleged That They Conferred a Benefit on Redflex Defendants

Redflex Defendants also argue that Plaintiffs' UCL claim "fails" because Plaintiffs have not asserted that Redflex received money from them.  However, as explained above, this is false.  Plaintiffs have alleged that the "Negotiable Fee Provision" in the Agreement between Redflex Defendants and the City provided Redflex Defendants with a vested interest in the receipt of fines from motorists,

---

[3] The plaintiff in *Khoury* had also been given three opportunities to plead his UCL claim, unlike the Plaintiffs here.  *See Khoury*, 14 Cal. App. 4th at 619.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

and made Redflex Defendants a direct recipient of those monies.  (FAC ¶ 36.) Indeed, the crux of Plaintiffs' UCL claims is that Plaintiffs have alleged that they have suffered a measureable loss of monies to which they were entitled, and that Redflex obtained funds that it is not entitled to keep.  *See*, *e.g.*, *Juarez v. Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889, 915 (2007).

Plaintiffs also have alleged that they conferred a benefit on Redflex Defendants by paying the City, which, in turn, paid Redflex Defendants.  (FAC ¶ 77.)  Redflex Defendants' citation to *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) for the proposition that a UCL action may only be maintained against the direct recipient of the plaintiff's money is misguided. Indeed, this exact misinterpretation of *Korea Supply* was flatly rejected in *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1338 (2009) ("[W]e conclude *Korea Supply* is inapposite to our case and does not hold that a plaintiff who paid a third party money (i.e., money in which the plaintiff had a vested interest) may not seek UCL restitution from a defendant whose unlawful business practice caused the plaintiff to pay that money.").  *See also Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1500 (2007) (UCL restitution does not require money be paid directly to defendant); *Matoff v. Brinker Restaurant Corp.* 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006) ("If Defendant unlawfully misappropriated Plaintiff's tips, Plaintiff may seek [UCL] restitution even if Defendant directed the misappropriated funds to the bartenders.").

The *Troyk* court correctly noted that the language from *Korea Supply* that, at first blush, appeared to support the distorted reading proffered by Redflex Defendants here, actually stands only for the proposition that a plaintiff seeking restitution under the UCL must have had a vested interest in the funds.  *See Troyk*, 171 Cal. App. 4th at 1338.  And Plaintiffs have clearly alleged that they had a vested interest in the funds used to pay their red light tickets.  The mere fact that City may have acted as an intermediary between Plaintiffs and Redflex Defendants

1   does not, therefore, entitle Redflex Defendants to have Plaintiffs' UCL claim

2   dismissed.

### 3.     Plaintiffs Have Adequately Alleged Causation

4           Redflex Defendants also argue that Plaintiffs failed to allege causation for

5   their UCL claims, in that they did not state that "but for the alleged lack of

6   warning period, they would have stopped at the intersection and abided by the

7   law." (Redflex Defendants' Motion to Dismiss at 14:19-20.)  Redflex Defendants

8   misstates the relevant analysis.  The relevant question for purposes of UCL

9   causation is whether Plaintiffs allege that they "lost money . . . as a result of"

10  Redflex's unfair competition.  *See* Bus. & Prof. Code § 17204.  And Plaintiffs

11  clearly alleged that their loss of money in the form of having to pay the tickets was

12  caused by Redflex Defendants's issuance of traffic citations that both failed to

13  comply with Section 21455.5(b) and breached their Agreement with the City,

14  which expressly required that Redflex Defendants issue warnings rather than

15  citations during the warning period.  (*See*, *e.g.*, FAC ¶¶ 4, 32, 85.)

16          Moreover, Redflex Defendants misstate the law.  Plaintiffs need not allege

17  that Redflex's statutory violation was the "but for" cause of their injury.  It is

18  sufficient that Redflex Defendants' statutory and contractual violations were

19  substantial factors in Plaintffs' injuries.  *See*, *e.g.*, *Troyk v. Farmers Group, Inc.*,

20  171 Cal. App. 4th 1305, 1350 (2009) (holding summary allegation of causation

21  sufficient for pleading purposes).  Indeed, the *Troyk* court noted:  "[W]e discern no

22  legislative intent from Proposition 64's language that would require a standard of

23  causation more stringent than the 'a substantial factor' standard that applies to

24  negligence actions (and possibly to breach of contract actions) for a plaintiff to

25  have UCL standing."  *Id.* at n.33.  Therefore, because Plaintiffs' allegations are

26  consistent with a "substantial factor" level of causation, they are sufficient.

27

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1          **4.      Plaintiffs' Payment of Fines Does Not Bar This Action**

2          For the same reasons that Plaintiffs' payment of fines do not bar Plaintiff

3    Hazard's unjust enrichment claim (see above), Plaintiffs' payment of fines does

4    not bar their UCL claims.

5          **5.      The Litigation Privilege Does Not Apply to Plaintiffs' UCL**

6                    **Claim**

7          For the same reasons that the litigation privilege does not bar Plaintiff

8    Hazard's unjust enrichment claim (see above), it also does not bar Plaintiffs' UCL

9    claims.

10   **IV.    CONCLUSION**

11         For the foregoing reasons, Redflex Defendants' Motion to Dismiss must be

12   denied.  In the alternative, Plaintiffs request an opportunity to amend the

13   complaint.

14

15   Dated:  November 15, 2010                    Respectfully submitted,

16                                                Initiative Legal Group APC

17

18                                          By:/s/Mark P. Pifko
                                               Gene Williams
19                                             Mark P. Pifko
                                               Theodore O'Reilly
20

21                                             Aaron D. Aftergood
                                               The Aftergood Law Firm
22

23                                             Attorneys for Plaintiffs Robert Plumleigh
                                               and Thomas R. Hazard III
24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067