Gene Williams (SBN 211390)
GWilliams@InitiativeLegal.com
Mark P. Pifko (SBN 228412)
MPifko@InitiativeLegal.com
Theodore O'Reilly (SBN 267675)
TOReilly @InitiativeLegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone:   (310) 556-5637
Facsimile:    (310) 861-9051

Aaron D. Aftergood (SBN 239853)
aaron@aftergoodesq.com
The Aftergood Law Firm
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone:   (310) 551-5221
Facsimile:    (310) 496-2840

Attorneys for Plaintiffs Robert Plumleigh
and Thomas R. Hazard III

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PLUMLEIGH and THOMAS R. HAZARD III, individually and on behalf of other members of the general public similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SANTA ANA; PAUL M. WALTERS; JOSEPH W. FLETCHER; REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC., a California corporation; REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.:  SACV10-1332-CJC (RNBx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC. AND REDFLEX TRAFFIC SYSTEMS, INC.'S MOTION TO STRIKE FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT To C.C.P. § 425.16** <br><br> Date:      December 13, 2010 <br> Time:     1:30 p.m. <br> Place:     Courtroom 9B |

# TABLE OF CONTENTS

I. INTRODUCTION .......................................................................................... 1

II. FACTS AND PROCEDURE ......................................................................... 2

III. ARGUMENT ................................................................................................ 5

    A. The Anti-SLAPP Statute Is Inapplicable Because Plaintiffs'
       Claims Arise From Redflex Defendants' Issuance Of
       Unlawful Automated Traffic Camera Citations, Not From
       Protected Speech ................................................................................ 5

       1. Redflex Defendants' Motion Must Be Denied Because
          They Fail to Make a *Prima Facie* Showing That
          Plaintiffs' Claims Arise From Their Purported
          Protected Speech ..................................................................... 6

       2. Defendants' Motion Should Be Denied Because
          Plaintiffs' Claims Are Legally Valid and Supported by
          Facts ........................................................................................ 8

          (a) Plaintiff Hazard's unjust enrichment claims is
              legally valid and supported by a sufficient *prima*
              *facie* showing of facts ................................................. 9

          (b) Unjust enrichment is a proper basis for restitution ................... 9

          (c) Plaintiffs' payment of fines does not bar Plaintiffs'
              claims under *Heck v. Humphrey* .............................. 10

          (d) Plaintiffs' allegations that Redflex violated
              Vehicle Code Section 21455.5(b) are sufficient ..................... 11

          (e) Plaintiffs have alleged that they conferred a benefit
              on Redflex Defendants ........................................................ 12

          (f) The California litigation privilege does not apply ................... 14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

(g)   The voluntary payment doctrine does not bar

Plaintiff Hazard's claim...........................................................16

3.   Plaintiffs' UCL Claim Is Legally Valid and Supported

by Sufficient Facts...................................................................17

(a)   Redflex Defendants' unfair competition caused

Plaintiffs and potential class members to lose

money .............................................................................18

(b)   Plaintiffs' UCL claims are not barred by *Heck v.*

*Humphrey* ......................................................................18

(c)   Redflex Defendants are City Defendants' Agents..................19

(d)   Plaintiffs conferred a benefit on Redflex...............................19

(e)   The litigation privilege does not apply to equitable

claims.............................................................................20

B.   The Anti-SLAPP Statute Is Inapplicable Because Plaintiffs'

Claims Are Brought Solely In the Public Interest ..................................20

1.   Plaintiffs Seek the Same Relief as All Other Members

of the Proposed Class ...................................................................21

2.   Plaintiffs' Action Will Enforce Due Process Rights and

Confer a Significant Benefit on the Large Proposed

Class ............................................................................................21

3.   Private Enforcement Is Necessary and Plaintiffs'

Personal Stakes Are Low .............................................................22

C.   The Anti-SLAPP Statute Is Inapplicable Because Plaintiffs'

Claims Arise From Redflex Defendants' Commercial

Conduct ...............................................................................................23

IV.   CONCLUSION......................................................................................23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bagget v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007) ...................................................................................9

*Flores v. Emerich & Fike*, 416 F. Supp. 2d 885 (E.D. Cal. 2006) .........................14

*Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000) ...............................................11

*Heck v. Humphrey*, 512 U.S. 477 (1994)...........................................................*passim*

*Matoff v. Brinker Restaurant Corp.*, 439 F. Supp. 2d 1035 (C.D. Cal. 2006) .................................................................................19

*Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058 (N.D. Cal. 2004) .................................................................................14

*Wallace v. Kato*, 549 U.S. 384 (2007)...........................................................10, 11

*Whitaker v. Garcetti*, 486 F.3d 572 (9th Cir. 2007) .........................................10, 11

**STATE CASES**

*Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864 (1998) ...............17

*Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581 (1961) ...............................17

*Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903 (2004) ...........................21, 22

*Block v. Sacramento Clinical Labs, Inc.*, 131 Cal. App. 3d 386 (1982) ..........15, 16

*California Federal Bank v. Matreyek*, 8 Cal. App. 4th 125 (1992) ......................13

*Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309 (2008) ..................................................................................20, 21

*County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262 (1999) ...................................................................................13

*CTC Real Estate Services v. Lepe*, 140 Cal. App. 4th 856 (2006) ......................13

*Graffiti Prot. Coatings, Inc. v. City of Pico Rivera*, 181 Cal. App. 4th 1207 (2010) .................................................................................7, 8

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

*Hagberg v. California Federal Bank FSB*, 32 Cal. 4th 350 (2004) ................15, 16

*Heyman v. Franchise Mortgage Acceptance Corp.*, 107 Cal. App. 4th
   921 (2003) ..............................................................................................16

*Juarez v. Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889 (2007).........................19

*Kimmel v. Goland*, 51 Cal. 3d 202 (1990)....................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)..........*passim*

*Kossian v. American Nat. Ins. Co.*, 254 Cal. App. 2d 647 (1967) ........................14

*Kuehn v. Kuehn*, 85 Cal. App. 4th 824 (2000) ...........................................16

*Leonte v. ACS State and Local Solutions, Inc.*, 123 Cal. App. 4th
   521 (2004) ..............................................................................................12

*M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623 (2001) ......................................9

*Malloy v. Fong*, 37 Cal. 2d 356 (1951) ...................................................12

*Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181 (2003) ...........................6

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004)......................................10

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ....................9

*City of Los Angeles v. Meyers Brothers Parking System, Inc.*, 54 Cal.
   App. 3d 135 (1975) .................................................................................12

*Michelson v. Hamada*, 29 Cal. App. 4th 1566 (1994)..........................................11

*N. California Carpenters Reg'l Council v. Warmington Hercules
   Assocs.*, 124 Cal. App. 4th 296 (2004)..................................................22

*Newport Bldg. Corp. v. City of Santa Ana*, 210 Cal. App. 2d
   771 (1962) ..............................................................................................17

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d
   1118 (1990) ............................................................................................15

*People v. Fischetti*, 170 Cal. App. 4th Supp. 1 (2008)...........................................4

*People v. Park*, 187 Cal. App. 4th Supp. 9 (2010) ...............................................4

*San Ramon Valley Fire Prot. Dist. v. Contra Costa County
   Employees' Ret. Ass'n*, 125 Cal. App. 4th 343 (2004) ........................................6

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

*Schroeder v. Irvine City Council*, 97 Cal. App. 4th 174 (2002)...............................5

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007) ................................19

*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12 (2010) .........................................6

*Trenfel v. Jasper*, 13 Cal. App. 4th 1694 (1993)...................................................15

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) ......................19, 20

*Wilcox v. Superior Court*, 27 Cal. App. 4th 809 (1994), *overruled on*

 *other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.

 4th 53 (2002) ....................................................................................................5

*Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296 (2000)..................................15


**STATE STATUTES**

Cal. Bus. & Prof. Code § 17204 ............................................................................18

Cal. Civ. Code § 2307.............................................................................................11

Cal. Code Civ. Proc. § 425.16 ........................................................................*passim*

Cal. Code Civ. Proc. § 425.16(b)(1)......................................................................6, 9

Cal. Code Civ. Proc. § 425.16(b)(2)..........................................................................9

Cal. Code Civ. Proc. § 425.16(e)...............................................................................6

Cal. Code Civ. Proc. § 425.17 ...................................................................................2

Cal. Code Civ. Proc. § 425.17(b)(1)...................................................................20, 21

Cal. Code Civ. Proc. § 425.17(b)(2)........................................................................20

Cal. Code Civ. Proc. § 425.17(b)(3)........................................................................20

Cal. Code Civ. Proc. § 425.17(c)(1)........................................................................23

Cal. Code Civ. Proc. § 425.17(c)(2)........................................................................23

Cal. Unfair Competition Law (UCL) .............................................................*passim*

Cal. Veh. Code § 2144.5(c) .....................................................................................12

Cal. Veh. Code § 21455.5(b)..........................................................................*passim*

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

# I.   INTRODUCTION

To enforce an important public benefit, Plaintiffs Robert Plumleigh and Thomas R. Hazard III ("Plaintiffs"), using their time and resources, brought this lawsuit against Defendants City of Santa Ana, Chief Paul M. Walters, and Joseph W. Fletcher (collectively, "City Defendants") and Defendants Redflex Traffic Systems (California), Inc. and Redflex Traffic Systems, Inc. ("Redflex Defendants").  Acting on behalf of the public, Plaintiffs assert claims against Defendants arising from Defendants' oppressive and reckless disregard of the rights of Plaintiffs and the putative class, stemming from Defendants unlawful issuance of non-warning, automated traffic camera citations without first instituting the thirty-day warning notice period required under California Vehicle Code § 21455.5(b).  (*See generally*, First Amended Complaint ("FAC") (Doc. No. 18).)

Rather than respond to the allegations and answer for their unlawful conduct, Redflex Defendants filed a Motion to Strike under California's anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16), claiming that in violating California law, Redflex Defendants are somehow exercising their right to free speech.  (*See* Special Motion to Strike First Amened Class Action Complaint Pursuant To C.C.P. § 425.16 ("Motion to Strike") (Doc. No. 32).)  The Motion to Strike, however, must fail because Redflex Defendants misapply the anti-SLAPP statute.  California's anti-SLAPP statute is designed to protect free speech from meritless lawsuits, and nothing more.  It does not apply to Plaintiffs' claims because Plaintiffs' claims arise from Redflex Defendants' unlawful and unfairly issued automated traffic camera citations, issued in direct violation of the thirty-day warning notice requirements under California Vehicle Code, section 21455.5(b).

Moreover, Plaintiffs' claims arise from Redflex Defendants' actions.  They do not arise from Redflex Defendants' purported protected speech (the automated

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   traffic camera photographs and videos that Redflex Defendants collected and sent

2   to City Defendants before issuing the unlawful citations).  But, even if Redflex

3   Defendants could somehow make a *prima facie* showing that their speech gave

4   rise to Plaintiffs' claims, the Motion to Strike still must fail because Plaintiffs'

5   claims are not meritless.  Plaintiffs' claims are valid and supported by the facts.  In

6   short, these facts include:  (1) Defendants' agreement concerning the design,

7   installation and operation of traffic cameras in the City of Santa Ana was executed

8   by City Defendants and Redflex Defendants on December 2, 2002 (the

9   "Agreement"), which provides an unlawful warning notice period (FAC ¶ 37);

10  (2) Defendants' failure to comply with the warning notice periods as required

11  under Section 21455.5(b) (*e.g.*, *id*. ¶¶ 53-54); (3) Defendants' issuance of

12  unlawful citations (*e.g.*, *id*. ¶ 32); and (4) Defendants' collection of unlawful fines

13  and fees (*e.g.*, *id*. ¶ 35).  This is not a SLAPP suit.

14       Furthermore, the anti-SLAPP statute expressly does not protect commercial

15  speech from lawsuits brought solely in the public interest.  Cal. Code Civ. Proc. §

16  425.17.  It is inapplicable because Plaintiffs seek no unique, personal advantages.

17  Instead, Plaintiffs bring this action only to enforce important due process rights on

18  behalf of a large proposed class, to help establish that traffic camera contractors

19  must follow California law, and to obtain the same restitution for all proposed

20  class members.  Moreover, Redflex Defendants are commercial entities whose

21  commercial speech amounts to representations of fact about their services to their

22  customer, the City of Santa Ana.

## II.  FACTS AND PROCEDURE

24       In 2002 and 2003, the City Defendants, along with the Redflex Defendants,

25  began operating a series of unlawful floating traffic camera systems.  (FAC ¶¶ 26-

26  28, 38-40.)  The first such traffic camera system was installed in the City of Santa

27  Ana in May 2003.  (*Id*. ¶ 39.)  The system was installed at the intersection of

28  Harbor Boulevard and McFadden Avenue.  (*Id*. ¶ 39.)  Under California Vehicle

Code, section 21455.5(b), citations issued from traffic camera systems are not valid until after a thirty-day warning notice period has been completed.  (*Id*. ¶ 25.)  During the warning notice period, the camera system must issue only warning notices to drivers.  (*Id*. ¶ 25.)  Citations cannot be issued until after an intersection's camera system issues warning notices for thirty days.  (*Id*. ¶¶ 25, 46, 48.)

Defendants initiated a thirty-day warning notice period for the traffic camera system installed at Harbor and McFadden.  (*Id*. ¶¶ 40, 42.)  However, over the next few years, after installing the camera system at Harbor and McFadden, Defendants installed nineteen more traffic camera systems at sixteen different intersections.  (*Id*. ¶ 44.)  Despite the requirements of Section 21455.5(b), Defendants did not initiate thirty-day warning notice periods at any of those sixteen intersections.  (*Id*. ¶¶ 46, 48, 49.)  Instead, in violation of law, Defendants issued thousands of citations to unwitting drivers each month.  (*Id*. ¶ 45.)

On December 2, 2002, before installing and operating the automated traffic camera systems, Redflex Defendants entered into a written contract concerning the design, installation and operation of the systems with City Defendants.  The Agreement defines "'Warning period' as 'the period of thirty (30) days after the Installation Date of the first intersection approach.'"  (*Id*. ¶ 37.)  The Agreement defines "'Installation date' as 'the date on which the City issues Final Acceptance for at least one intersection approach.'"  (*Id*. ¶ 37.)

The Agreement also defines Redflex Defendants' compensation.  (*Id*. ¶¶ 35, 36.)  Redflex Defendants would be paid a fee only for traffic camera systems that were "functional," or actively issuing traffic tickets.  (*Id*. ¶ 35.)  The Agreement also contains a "Negotiable Fee Provision," providing that the City has the option of "renegotiating" Redflex Defendants' compensation if the City fails to recoup the cost of paying that very compensation.  (*Id*. ¶ 36.)  The import of this provision was clear—Redflex Defendants were given a direct stake in the

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  collection of fines from citizens.

2  On December 18, 2008, in *People v. Fischetti*, 170 Cal. App. 4th Supp. 1

3  (2008), the Appellate Division of the Superior Court of California, Orange

4  County, held that Defendants failed to comply with Section 21455.5(b).  (*Id*. ¶ 46.)

5  Defendants were required to institute warning notice periods at each intersection

6  and had failed to do so.  (*Id*. ¶ 46.)

7  Defendants issued Plaintiff Robert Plumleigh a traffic camera citation for an

8  alleged violation which occurred on February 27, 2008.  (*Id*. ¶ 53.)

9  Plaintiff Plumleigh was required to pay nearly $480 in fines and traffic school

10  fees.  (*Id*. ¶ 53.)  On May 3, 2008, the Superior Court dismissed the traffic citation

11  case without convicting Plaintiff Plumleigh of any violations of law.  (*Id*. ¶ 53.)

12  Defendants issued Plaintiff Thomas R. Hazard III a traffic camera citation

13  for an alleged violation which occurred on December 17, 2008.  (*Id*. ¶ 54.)

14  Plaintiff Hazard was required to pay more than $400 in fines and traffic school

15  fees.  (*Id*. ¶ 54.)  On March 20, 2009, the Superior Court dismissed the case

16  against Plaintiff Hazard.  (*Id*. ¶ 54.)

17  On November 25, 2009, City Defendants instituted a thirty-day warning

18  notice period for sixteen intersections across the City of Santa Ana.  (*Id*. ¶ 47.)

19  The warning notice periods lasted until December 28, 2009.  (*Id*. ¶ 47.)

20  On July 23, 2010, in *People v. Park*, 187 Cal. App. 4th Supp. 9 (2010), the

21  Appellate Division of the Superior Court of California, Orange County, again held

22  that Defendants failed to comply with Section 21455.5(b)'s warning notice period

23  requirement.  (*Id*. ¶ 48.)  The Court of Appeal held that a warning notice period

24  must be instituted at each intersection with a traffic camera.  (*Id*. ¶ 48.)

25  On September 3, 2010, Plaintiffs filed a Complaint against Defendants.

26  (Doc. No. 1.)  On October 12, 2010, Plaintiff filed the present First Amended

27  Complaint.  (Doc. No. 18.)  Plaintiff Hazard alleges, under title 42 United States

28  Code, section 1983, that City Defendants violated his Due Process rights.  (FAC

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

¶¶ 55-66.)  Plaintiff Hazard also asserts a claim for Unjust Enrichment, requesting restitution from Defendant City of Santa Ana and the Redflex Defendants.  (*Id.* ¶¶ 73-80, 12-14.)  Both Plaintiffs also allege claims for inverse condemnation, claiming that City Defendants violated the Takings Clause of the California Constitution.  (*Id.* ¶¶ 67-72.)  Finally, Plaintiffs allege that Redflex Defendants violated California's Unfair Competition Law, California Business and Professions Code, sections 17200 *et seq.* ("UCL").  (*Id.* ¶¶ 81-86.)  On November 15, 2010, Redflex Defendants filed the present Motion to Strike.  (Doc. No. 32.)

## III.   ARGUMENT

### A.   The Anti-SLAPP Statute Is Inapplicable Because Plaintiffs' Claims Arise From Redflex Defendants' Issuance Of Unlawful Automated Traffic Camera Citations, Not From Protected Speech

Plaintiffs' action is not a SLAPP suit.  Generally, SLAPP suits seek to gain economic advantages at the expense of defendants' protected speech, rather than vindicate any legally cognizable rights that the plaintiff may have.  *Schroeder v. Irvine City Council*, 97 Cal. App. 4th 174, 182 (2002).  According to California courts, "[a] SLAPP suit is typically filed to delay and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances, rather than to prevail on the suit."  *Id.* at 182-83.  The "paradigm" SLAPP suit typically is one that is "filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans."  *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 815 (1994), *overruled on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002).

Here, the anti-SLAPP statute is inapplicable and provides no basis for a special motion to strike.  Additionally, even if the statute did apply, Redflex

Defendants must first make a *prima facie* showing that Plaintiff's claims arise from defendant's protected speech.  *See* Cal. Code Civ. Proc. § 425.16(b)(1); *see also Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (2010).  According to Redflex Defendants, the purportedly protected speech consists of writings made before a judicial or executive proceeding or in connection with an issue under consideration or review by an executive or judicial body.  Cal. Code Civ. Proc. § 425.16(e).  Furthermore, even if Redflex Defendants could meet that burden, which they cannot, the anti-SLAPP statute remains inapplicable if Plaintiffs demonstrates a probability of success.  Cal. Code Civ. Proc. § 425.16(b)(1); *Simpson Strong-Tie Co.*, 49 Cal. 4th at 21.

> **1.** **Redflex Defendants' Motion Must Be Denied Because They Fail to Make a *Prima Facie* Showing That Plaintiffs' Claims Arise From Their Purported Protected Speech**

A defendant in an ordinary private dispute cannot invoke the anti-SLAPP statute simply because the complaint contains some references to the defendant's protected speech.  *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188 (2003).  In other words, if the principal thrust of the plaintiff's claims is not protected speech, then the anti-SLAPP statute does not apply.  *Id.*

For example, courts have held that a plaintiff's claims do not arise from protected speech merely because some protected speech took place before plaintiff's claims were filed.  *San Ramon Valley Fire Prot. Dist. v. Contra Costa County Employees' Ret. Ass'n*, 125 Cal. App. 4th 343 (2004).  In *San Ramon*, the defendant, the board of a county retirement association, held a public meeting and voted to charge plaintiff, another public entity, several million dollars for pension contributions.  *Id.* at 347-48.  The plaintiff filed a petition for mandamus.  *Id.* at 348.  The defendant argued that the anti-SLAPP statute applied because the plaintiff's petition arose from defendant's public meeting and vote.  *Id.* at 353.  But the plaintiff's petition did not arise from the content of the public meeting and

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    vote.  *Id.* at 357.  It arose from the ensuing decision to charge plaintiff more for

2    pension contributions.  *Id.*  The decision itself was government action, not speech,

3    and it, not the meeting or vote, gave rise to plaintiff's petition.  *Id.* at 353-54.  The

4    anti-SLAPP statute did not apply.  *See id.* at 359.

5         In other words, the anti-SLAPP statute does not apply if protected speech

6    serves only as evidence of liability.  *Graffiti Prot. Coatings, Inc. v. City of Pico*

7    *Rivera*, 181 Cal. App. 4th 1207, 1220 (2010).  The statute only applies if the

8    protected speech gives rise to the claims.  *Id.*  In *Graffiti Protective Coatings*, the

9    plaintiff lost a contract with the City of Pico Rivera and brought claims based on

10   violations of competitive bidding laws.  *Id.* at 1224.  The City argued that its

11   communications regarding the bidding process were protected speech and gave

12   rise to plaintiff's claims.  *See id.*  However, the City's decision to "[forgo] the

13   [competitive] bidding process altogether" was the basis of the plaintiff's claims.

14   *See id.*  Thus, "[t]hat City officials may have deliberated in deciding whether to

15   invite bids in selecting [plaintiff's] successor does not mean the City exercised its

16   right of petition or free speech."  *Id.*  At most, the City's communications were

17   evidence of liability.  *See id.*

18        Here, the anti-SLAPP statute does not apply because Plaintiffs' claims arise

19   from Redflex Defendants' unlawful issuance of traffic tickets, without complying

20   with the warning notice period, not from any prior, purported protected speech.

21   The mere fact that protected speech may have occurred prior to the filing of

22   Plaintiffs' claims does not mean the anti-SLAPP statute is applicable.  Plaintiffs'

23   claims do not arise from the content of the automated traffic camera photographs

24   and videos, just like the *San Ramon* plaintiff's claims did not arise from the

25   content of the defendant board's meeting and vote.  Indeed, in *San Ramon*, the

26   ensuring decision to charge plaintiff more for pension contributions gave rise to

27   plaintiff's claims.  Here, it the Redflex Defendant's failure to comply with the

28   requisite warning notice period that gives rise to the claims.  Plaintiffs' claims

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  arise out of Redflex Defendants' actions (failing to comply with the warning

2  notice period), not speech (the substance of the citations).

3       Redflex Defendants' provision of automated traffic camera videos and

4  photographs to City Defendants is mere evidence of liability, not the basis for

5  liability.  Just as the defendant city's deliberations provided evidence of liability in

6  *Graffiti Protective Coatings*, Redflex Defendants' provision of videos and

7  photographs provides evidence of liability here.  The court held in *Graffiti*

8  *Protective Coatings* "[t]hat City officials may have deliberated in deciding

9  whether to invite bids in selecting [plaintiff's] successor does not mean the City

10 exercised its right of petition or free speech."  Similarly, that Redflex Defendants

11 provided videos and photographs to City Defendants does not mean that Redflex

12 Defendants engaged in protected speech when they later failed to comply with the

13 warning notice period and issued unlawful traffic citations.

14      Confusing the issues, Redflex Defendants present a red herring as the basis

15 for their Motion to Strike.  The Motion focuses almost exclusively on whether the

16 videos and pictures they submitted to City Defendants were "writings" under the

17 anti-SLAPP statute.  But, nowhere do Redflex Defendants explain *how* Plaintiffs'

18 claims arise from such "writings."  They baldly assume it.  Indeed, Redflex

19 Defendants cannot explain how Plaintiffs' claims "chill" their ability to provide

20 automated traffic camera videos and photographs to City Defendants.  Plaintiffs'

21 claims do not arise from the content of the videos or photographs.  Plaintiffs'

22 claims arise from Redflex Defendants' subsequent actions in unlawfully issuing

23 citations and unjustly retaining Plaintiffs' and potential class members' money.

24 Issuing citations and collecting fees is not free speech.  The anti-SLAPP statute

25 does not apply.

26           **2.    Defendants' Motion Should Be Denied Because Plaintiffs'**

27               **Claims Are Legally Valid and Supported by Facts**

28      Even if Redflex Defendants could somehow make a *prima facie* showing

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   that Plaintiffs' claims arise from some protected speech, their Motion to Strike
2   still must fail because they cannot meet their burden to show that Plaintiffs claims
3   have no probability of success.

4       Claims have a probability of success if they are legally sufficient and
5   supported by a *prima facie* showing of facts.  *See* Cal. Code Civ. Proc.
6   § 425.16(b)(1); *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 629-37 (2001).
7   When determining if a claim is supported by a *prima facie* showing of facts,
8   courts may consider the pleadings.  *See* Cal. Code Civ. Proc. § 425.16(b)(2); *see
9   also Salma v. Capon*, 161 Cal. App. 4th 1275, 1289-90 (2008).

10          **(a)     Plaintiff Hazard's unjust enrichment claims is legally**
11                    **valid and supported by a sufficient *prima facie***
12                    **showing of facts**

13      Plaintiff Hazard's unjust enrichment claim is legally valid because (i) it is a
14   proper basis for restitution; (ii) it is not barred by *Heck v. Humphrey*, 512 U.S. 477
15   (1994), because his case was dismissed; (iii) Redflex Defendants are subject to
16   Section 21455.5(b) as City Defendants' agents; (iv) Plaintiff Hazard conferred an
17   indirect benefit on Redflex; (v) the litigation privilege does not apply to equitable
18   claims; and (vi) Plaintiff Hazard was coerced to pay fines and fees.  Moreover, as
19   shown below, the pleadings provide a sufficient *prima facie* showing of facts.
20   Plaintiffs summarize the validity of their claims below, but for a more detailed
21   discussion, Plaintiffs refer the Court to their Opposition to Redflex Defendants'
22   Motion to Dismiss (Doc. No. 33)

23          **(b)     Unjust enrichment is a proper basis for restitution**

24      Though unjust enrichment may not be a distinct cause of action under
25   California law, it is a basis for obtaining restitution based on quasi-contract or
26   imposition of a constructive trust.  *McKell v. Washington Mutual, Inc.*, 142 Cal.
27   App. 4th 1457, 1490 (2006); *Bagget v. Hewlett-Packard Co.*, 582 F. Supp. 2d
28   1261, 1270 (C.D. Cal. 2007).  Quasi-contract can serve as the basis for the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

equitable remedy of restitution where one party obtains a benefit which he may not justly retain.  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004).

Plaintiff Hazard has alleged sufficient facts to support his unjust enrichment claim because he alleges that Redflex Defendants unlawfully aided and abetted the City Defendants' illegal citations, in direct violation of Section 21455.5(b).  (FAC ¶ 17.)  Plaintiff Hazard further alleges that Redflex Defendants nevertheless received and retained a portion of the money collected.  (*Id.* ¶¶ 36, 77.)  If the Court wishes to re-characterize Plaintiff Hazard's claim, it is cognizable as a claim for breach of quasi-contract.  Therefore, under to a quasi-contract theory, Plaintiff Hazard may obtain restitution.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146-47 (2003).

### (c)  Plaintiffs' payment of fines does not bar Plaintiffs' claims under *Heck v. Humphrey*

*Heck v. Humphrey*, 512 U.S. 477 (1994), does not apply because Plaintiffs have suffered no convictions.  (FAC ¶¶ 53, 54.)  Under *Heck*, civil claims that amount to collateral attacks on criminal convictions do not accrue until the convictions are overturned or reversed in some way.  512 U.S. at 486-87.  Plaintiffs allege that their traffic camera cases were dismissed after they paid their fines and attended traffic school.  (FAC ¶¶ 53, 54.)  Thus, *Heck* is inapplicable.

*Heck*'s bar on civil claim accrual only applies when a plaintiff has been convicted and the plaintiffs' claims, if successful, would imply that the conviction was invalid.  *Wallace v. Kato*, 549 U.S. 384, 393 (2007).  It is well-established that plaintiffs who have not suffered convictions may recover damages for unconstitutional criminal proceedings.  *Wallace*, 549 U.S. at 393; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007).  In *Whitaker*, several plaintiffs brought Section 1983 claims against the government for the government's failure to disclose wiretaps.  *Whitaker*, 486 F.3d at 576-79.  The government used the wiretaps to prosecute and convict all but one of the plaintiffs.  *Id.*  Thus, the court

1  held that *Heck* was "inapplicable to [the] claims" of the plaintiff who had not been

2  convicted.  *Id.* at 581.

3      Furthermore, Ninth Circuit authority is clear that if a plaintiff's criminal

4  case is dismissed, as with Plaintiffs here, the plaintiff may recover damages for

5  unconstitutional proceedings.  *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th

6  Cir. 2000), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).

7      Plaintiffs' claims are valid under *Heck* because Plaintiffs suffered no

8  convictions and the cases against them were dismissed.  (FAC ¶¶ 53, 54.)  In the

9  absence of a conviction, *Whitaker* held that "the *Heck* Court's objectives of

10 preserving consistency and finality, and preventing 'a collateral attack on [a]

11 conviction through the vehicle of a civil suit'" are not implicated.  *Harvey*, 210

12 F.3d at 1016, (*quoting Heck*, 512 U.S. at 484-85).  Therefore, *Heck* is inapplicable

13 to Plaintiffs claims.

### (d)     Plaintiffs' allegations that Redflex violated Vehicle Code Section 21455.5(b) are sufficient

16     Redflex Defendants argue that Plaintiff Hazard's unjust enrichment claim

17 may not proceed against it because Redflex Defendants are private companies, and

18 not a local jurisdiction.  However, Redflex Defendants may be liable for a

19 violation of Section 21455.5(b) because they acted as the City's agent.  Normally,

20 agency is created by an express contract or authorization.  *See* Cal. Civ. Code

21 §§ 2299, 2307.  However, agency may also be implied from the circumstances and

22 conduct of the parties.  *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1579

23 (1994).

> Whether a person performing work for another is an agent . . . depends primarily upon whether the one for whom the work is done has the legal right to control the activities of the alleged agent.  It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent.  The existence of the right of control and supervision establishes the existence of an agency relationship.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

*Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951).

Here, Plaintiffs' allegations show that Redflex Defendants operated under the City's control.  The Agreement between Redflex Defendants and the City Defendants requires that the all violation data be stored on the Redflex system, that the City Defendants be provided all such data to review, that the City be allowed to access Redflex's computer files "through a virtual private network in encrypted format," that and that City be allowed to "renegotiate" the Agreement if it realizes insufficient citation revenue.  (FAC ¶¶ 30, 31, 36.)  These allegations support a finding of control sufficient to create an agency relationship.  *Leonte v. ACS State and Local Solutions, Inc.*, 123 Cal. App. 4th 521, 528 (2004) (concluding that similar agreement between municipality and private red light camera contractor evidenced control of contractor by municipality).  And, as noted above, an agent may also be an independent contractor, and vice versa.  *City of Los Angeles v. Meyers Brothers Parking System, Inc.*, 54 Cal. App. 3d 135 (1975).  Indeed, the Vehicle Code itself requires that an agency relationship be formed whenever the red light camera function is delegated to a private entity.  *See* Cal. Veh. Code § 2144.5(c) (requiring that government agency retain control over the guidelines to be implemented in issuing citations, treatment of confidential information, and performance of certain "day-to-day functions" including the inspection and calibration of equipment and locations of signals).

**(e)   Plaintiffs have alleged that they conferred a benefit on Redflex Defendants**

Plaintiff Hazard has pleaded that he directly conferred a benefit on Redflex Defendants.  Plaintiff Hazard alleged that "Defendants" collected fines from "non-warning automated traffic camera tickets."  (FAC ¶ 50.)  Plaintiff Hazard also alleged that Redflex Defendants' contract with the City Defendants contained a "Negotiable Fee Provision," providing that the City Defendants could renegotiate their contract with Redflex Defendants if they did not recoup the costs incurred in

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

connection with installing and operating the new cameras.  (*Id*. ¶ 36).  Because Redflex Defendants' remuneration is, under the Agreement, tied directly to the volume of tickets distributed and amount of money collected, the Negotiable Fee Provision provides Redflex Defendants with a direct stake in the issuance and collection of traffic tickets.  Furthermore, as alleged in the FAC, under the Agreement, Redflex Defendants only were paid a fee only for traffic camera systems that were "functional."  (FAC ¶ 35.)  Under the Agreement, a traffic camera system was functional only if it was actively issuing traffic tickets.  (*Id*.)  Therefore, the under the Agreement, Redflex Defendants were only compensated for traffic camera systems that were issuing citations (not warnings), and thus, they received a direct monetary benefit from issuing citations and not complying with the requisite thirty-day warning notice period.

Moreover, Plaintiff Hazard alleges that he paid fines to the City Defendants "who in turn, paid Redflex Defendants."  (FAC ¶ 77.)  Therefore, Plaintiff Hazard has also alleged that he indirectly conferred a benefit on Redflex Defendants.  Benefits conferred indirectly are also cognizable as a basis for an unjust enrichment claim under California law.  For instance, in *CTC Real Estate Services v. Lepe*, 140 Cal. App. 4th 856, 861 (2006) the plaintiff—an identity theft victim—recovered money from a foreclosure sale surplus where the identity thief had taken out the loan used to buy foreclosed property in the plaintiff's name.  In discussing unjust enrichment, the court noted that "[t]he mere fortuity that the wrongdoer has disappeared without receiving the surplus and is not subject to legal action should not, as a matter of equity, preclude Ms. Lepe from being able to recover the funds not in the possession of the identity thief."

That money was not paid directly to the defendant by the plaintiff, but was, instead, paid to an intermediary first, is of no moment.  *County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1278 (1999) (citing *California Federal Bank v. Matreyek*, 8 Cal. App. 4th 125, 132 (1992)) ("For a

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  benefit to be conferred, it is not essential that money be paid directly to the

2  recipient by the party seeking restitution.”); *Kossian v. American Nat. Ins. Co.*,

3  254 Cal. App. 2d 647, 650 (1967) (“doctrine of unjust enrichment [is] a theory

4  which can, in some instances, have validity without privity of relationship”).

5  Here, even if Plaintiffs had alleged only that they paid money to Redflex

6  Defendants indirectly, Redflex Defendants are accountable to Plaintiffs because,

7  otherwise, Redflex Defendants would unjustly benefit, and Plaintiffs would

8  unjustly suffer loss.

9          **(f)**    **The California litigation privilege does not apply**

10       The litigation privilege is intended to protect communications in connection

11  with litigation or some other judicial or quasi-judicial proceeding.  It extends to

12  any communication that bears “some relation to any ongoing or anticipated

13  lawsuit.”  *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006).

14  It is not intended to apply to the collection of evidence for possible later use.

15  *Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058, 1065 (N.D. Cal.

16  2004) (noting that the “mere potential or bare possibility that judicial proceedings

17  might be instituted in the future is insufficient to invoke the litigation privilege

18  under CC § 47.”).  This is especially so where, as here, the collection of evidence

19  was itself unlawful.  *See Kimmel v. Goland*, 51 Cal. 3d 202, 211 (1990) (holding

20  that litigation privilege did not bar suit for invasion of privacy by the illegal

21  recording of confidential telephone conversations done for the purpose of

22  gathering evidence to be used in future litigation).

23       Redflex Defendants collected evidence not as part of an ongoing or

24  imminent judicial proceeding.  Indeed, Redflex Defendants expressly disclaim that

25  they had any knowledge or part of the decision to issue traffic tickets or initiate

26  any official proceedings.  (*See* Redflex Defendants’ Motion to Dismiss at 10:2-3

27  (“Redflex provides th[e] [traffic] information to the City, who then decides

28  whether to issue citations and prosecute the case.”))

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS’ OPPOSITION TO DEFENDANT’S DEMURRER TO THE FIRST AMENDED COMPLAINT

1    Concerning this issue, Redflex Defedants rely on *Block v. Sacramento*

2    *Clinical Labs, Inc.*, 131 Cal. App. 3d 386, 394 (1982), in which the court analyzed

3    the applicability of the litigation privilege to professional malpractice claims.  The

4    *Block* court found that where the crux of the action was alleged negligent

5    publication of an allegedly negligently prepared report by a professional (a

6    coroner) in connection with the district attorney's investigation of possible

7    criminal charges, the privilege barred the plaintiff from pursuing the action.

8    However, in stark contrast to this case, all of the actions taken in *Block* that were

9    the basis of the suit were performed in preparation for a specific litigation.

10    Moreover, the litigation privilege of Section 47(b) applies only to

11    communications, and not to pure conduct.  *See*, *e.g.*, *Pacific Gas & Electric Co. v.*

12    *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1132 n.12 (1990).  The relevant test is

13    whether conduct or communication predominates in the plaintiff's pleadings.

14    *Trenfel v. Jasper*, 13 Cal. App. 4th 1694, 1713 (1993).  Plaintiff Hazard's

15    allegations clearly focus on Redflex Defendants' **conduct**:  Redflex's having

16    "designed, installed, and operated" the automated traffic camera system (FAC

17    ¶¶ 12, 13, 27); the installation of approximately twenty traffic cameras (*Id*. ¶ 29);

18    printing and mailing citations (*Id*. ¶ 32); processing complaints and questions from

19    the public (*Id*. ¶ 33); and training City personnel in presentation strategies for the

20    courtroom (*Id*. ¶ 34).  In fact, there is not a single "communication" by Redflex

21    Defendants alleged in the entire FAC.  *Compare with Block*, 131 Cal. App. 3d at

22    387 (publication of the coroner's report falsely asserting high aspirin level in the

23    decedent's blood as an "injurious falsehood" and the communication at the heart

24    of plaintiff's case); *Hagberg v. California Federal Bank FSB*, 32 Cal. 4th 350, 356

25    (2004) (telephonic report to police falsely accusing customer of attempting to

26    negotiate a fake check held a privileged communication); *and Wise v. Thrifty*

27    *Payless, Inc.*, 83 Cal. App. 4th 1296, 1303 (2000) (man's false report to the DMV

28    that his estranged wife was unfit to drive due to drug use privileged).  The instant

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

case simply does not fit within the Section 47(b) model as there is no "communication" at issue.  Because it is only the Redflex Defendants' conduct that is at issue in Plaintiffs' FAC, Section 47(b) does not apply.

Finally, the litigation privilege as codified in Section 47(b) applies only to defamation claims or torts, however labeled, "that are predicated upon the publication in protected proceedings of an injurious falsehood." *Block*, 131 Cal. App. 3d at 391.  However, Plaintiff Hazard's unjust enrichment claim is not a tort, nor is it based, to any extent, on the publication of an injurious falsehood.  Hazard does not allege that there was anything "false" about Redflex's conduct.  Rather, Plaintiff Hazard alleges that Redflex Defendants—in conjunction with the City Defendants—failed to comply with the California Vehicle Code's warning notice requirements.

Thus, because Section 47(b) applies only to defamation or tort claims predicated on the communication of an "injurious falsehood," it cannot bar a claim for unjust enrichment.  *See*, *e.g.*, *Hagberg*, 32 Cal. 4th at 360 (holding that Section 47(b) "bars all **tort** causes of action, except a claim for malicious prosecution."); *Heyman v. Franchise Mortgage Acceptance Corp.*, 107 Cal. App. 4th 921, 925 n.2 (2003) ("Although the litigation privilege contained in CC § 47(b) bars a direct action for fraud committed in a judicial proceeding, it does not apply to an equitable action to set aside a settlement agreement for extrinsic fraud."); *Kuehn v. Kuehn*, 85 Cal. App. 4th 824, 834 (2000) ("the absolute litigation privilege of CC § 47(b) bars derivative **tort** actions and applies to all **torts** other than malicious prosecution, including fraud, negligence, and negligent misrepresentation."); *Block*, 131 Cal. App. 3d at 391 ("The privilege attaches where the **tort**, however denominated, is one for **defamation**.") (emphasis added).

### (g)   The voluntary payment doctrine does not bar Plaintiff Hazard's claim

The voluntary payment doctrine does not bar Hazard's unjust enrichment

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

claim because he alleged that he was coerced into paying his fine.  Whether a payment is considered voluntary or involuntary is dependent upon "the circumstances attendant upon payment and a consideration of the consequences which might follow upon non-payment."  *See Newport Bldg. Corp. v. City of Santa Ana*, 210 Cal. App. 2d 771, 778 (1962).  Coercion can be found in instances where a reasonable person finds that "in order to preserve his property . . . it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain."  *Id*.; and *see Am. Motorists Ins. Co. v. Superior Court*, 68 Cal. App. 4th 864, 874 (1998) (claim for restitution lies for payment of "excessive or unnecessary fees and costs").  Moreover, "[I]t is elementary that an excessive payment made in ignorance of the fact that it is excessive is recoverable."  *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961).  Whether the payment of the fine was made voluntarily or through mistake "depend[s] upon the intentions of [P]laintiff in making them," and is to be judged "in light of the facts that were known" to Plaintiff.  *Id*. at 587.  "Means of knowledge [is] not the equivalent of knowledge."  *Id*.

Plaintiff Hazard alleges that he was "forced and required to pay" his fine. (FAC ¶53.)  Embedded in Hazard's allegation is that, when he paid his ticket: (1) he had no actual knowledge that he did not owe the fine because of Redflex Defendants' violation of the Vehicle Code, and (2) Plaintiff Hazard paid his fine only to avoid the burdensome process of fighting the citation and the threat of facing possible criminal consequences.

### 3.     Plaintiffs' UCL Claim Is Legally Valid and Supported by Sufficient Facts

Plaintiffs' UCL claims are legally valid because (i) Redflex Defendants' unfair competition caused Plaintiffs and potential class members to lose money; (ii) they are not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiffs' cases were dismissed; (iii) Redflex Defendants are subject to Section

21455.5(b) as City Defendants' agents; (iv) Plaintiffs conferred an indirect benefit on Redflex; and (v) the litigation privilege does not apply to equitable claims. Moreover, as shown below, the pleadings provide a sufficient *prima facie* showing of facts.

### (a) Redflex Defendants' unfair competition caused Plaintiffs and potential class members to lose money

The relevant question for purposes of UCL causation is whether Plaintiffs allege that they "lost money . . . as a result of" Redflex's unfair competition. *See* Cal. Bus. & Prof. Code § 17204. Plaintiffs clearly alleged that their loss of money in the form of having to pay the tickets was caused by Redflex Defendants's issuance of traffic citations that both failed to comply with Section 21455.5(b) and breached their Agreement with the City, which expressly required that Redflex Defendants issue warnings rather than citations during the warning period. (*See*, *e.g.*, FAC ¶¶ 4, 32, 85.)

Plaintiffs need not allege that Redflex's statutory violation was the "but for" cause of their injury. It is sufficient that Redflex Defendants' statutory and contractual violations were substantial factors in Plaintffs' injuries. *See*, *e.g.*, *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1350 (2009) (holding summary allegation of causation sufficient for pleading purposes). Indeed, the *Troyk* court noted: "[W]e discern no legislative intent from Proposition 64's language that would require a standard of causation more stringent than the 'a substantial factor' standard that applies to negligence actions (and possibly to breach of contract actions) for a plaintiff to have UCL standing." *Id.* at n.33. Therefore, because Plaintiffs' allegations are consistent with a "substantial factor" level of causation, they are sufficient.

### (b) Plaintiffs' UCL claims are not barred by *Heck v. Humphrey*

For the reasons discussed above, *Heck* does not bar Plaintiffs' UCL claims.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

### (c)   Redflex Defendants are City Defendants' Agents

For the reasons discussed above, Redflex Defendants' are City Defendants' Agents and are required to comply with Section 21455.5(b).

### (d)   Plaintiffs conferred a benefit on Redflex

Plaintiffs have alleged that the "Negotiable Fee Provision" in the Agreement between Redflex Defendants and the City provided Redflex Defendants with a vested interest in the receipt of fines from motorists, and made Redflex Defendants a direct recipient of those monies.  (FAC ¶ 36.)  Indeed, the crux of Plaintiffs' UCL claims is that Plaintiffs have alleged that they have suffered a measureable loss of monies to which they were entitled, and that Redflex obtained funds that it is not entitled to keep.  *See*, *e.g.*, *Juarez v. Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889, 915 (2007).

Plaintiffs also have alleged that they conferred a benefit on Redflex Defendants by paying the City, which, in turn, paid Redflex Defendants.  (FAC ¶ 77.)  Redflex Defendants' citation to *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) for the proposition that a UCL action may only be maintained against the direct recipient of the plaintiff's money is misguided.  Indeed, this exact misinterpretation of *Korea Supply* was flatly rejected in *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1338 (2009) ("[W]e conclude *Korea Supply* is inapposite to our case and does not hold that a plaintiff who paid a third party money (i.e., money in which the plaintiff had a vested interest) may not seek UCL restitution from a defendant whose unlawful business practice caused the plaintiff to pay that money.").  *See also Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1500 (2007) (UCL restitution does not require money be paid directly to defendant); *Matoff v. Brinker Restaurant Corp.* 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006) ("If Defendant unlawfully misappropriated Plaintiff's tips, Plaintiff may seek [UCL] restitution even if Defendant directed the misappropriated funds to the bartenders.").

The *Troyk* court correctly noted that the language from *Korea Supply* that, at first blush, appeared to support the distorted reading proffered by Redflex Defendants here, actually stands only for the proposition that a plaintiff seeking restitution under the UCL must have had a vested interest in the funds.  *See Troyk*, 171 Cal. App. 4th at 1338.  And Plaintiffs have clearly alleged that they had a vested interest in the funds used to pay their red light tickets.  The mere fact that City may have acted as an intermediary between Plaintiffs and Redflex Defendants does not, therefore, entitle Redflex Defendants to have Plaintiffs' UCL claim dismissed.

**(e)      The litigation privilege does not apply to equitable claims**

For the reasons discussed above, the litigation privilege does not apply to Plaintiffs' UCL claims.

**B.      The Anti-SLAPP Statute Is Inapplicable Because Plaintiffs' Claims Are Brought Solely In the Public Interest**

Again, assuming that Redflex Defendants could somehow make a *prima facie* showing that Plaintiffs' claims arise from protected speech, Plaintiffs' action is not a SLAPP suit because it is brought solely in the public interest and on behalf of the general public.  The anti-SLAPP statute is inapplicable to any action brought solely in the public interest or on behalf of the general public if (1) the plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member; (2) the action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or non-pecuniary, on the general public or a large class of persons; and (3) private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.  Cal. Code Civ. Proc. § 425.17(b)(1)-(3); *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 316 (2008).

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Plaintiffs satisfy all three criteria here.

2       **1.**    **Plaintiffs Seek the Same Relief as All Other Members of**

3             **the Proposed Class**

4       Plaintiffs seek the same relief as all other members of the proposed class

5  because they seek to recover restitution for fines and traffic school, just like

6  everyone else who was issued an unlawful, non-warning automated traffic camera

7  citation.  A plaintiff who seeks the same relief as all other members of the

8  proposed class satisfies the first criterion of the anti-SLAPP statute's public

9  interest exception.  *See* Cal. Code Civ. Proc. § 425.17(b)(1).  The plaintiff cannot

10  seek relief *different* from that sought for others.  *See Club Members for an Honest*

11  *Election*, 45 Cal. 4th at 316-17.  Redflex Defendants attempt to analogize

12  Plaintiffs here to the plaintiffs in *Club Members for an Honest Election*, who

13  sought "personal relief."  *Id.* at 317.  Those plaintiffs asked for declaratory and

14  other relief after a Sierra Club election.  *Id.* at 314.  But they also asked the court

15  to order Sierra Club to publish an article that they wrote and appoint them to the

16  Sierra Club's board of directors.  *See id.* at 317.  Thus, the plaintiffs sought a

17  unique, personal advantage, different from the relief sought for the general public.

18  *Id.*  Here, unlike in *Club Members for an Honest Election*, the plaintiffs do not

19  seek any unique personal advantage.  Instead, they seek the same restitution

20  sought for all other potential class members.

21       **2.**    **Plaintiffs' Action Will Enforce Due Process Rights and**

22             **Confer a Significant Benefit on the Large Proposed Class**

23       Plaintiffs' action is designed to enforce important Due Process rights as

24  well as the California Vehicle Code for all members of the public.  It will help

25  establish that automated traffic camera contractors and the municipalities that

26  retain them must comply with California law.  Finally, it will result in restitution

27  for a large class of citizens.  Plaintiffs' action is distinguishable from the action in

28  *Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903 (2004), which Redflex

1   Defendants cite.  In *Blanchard*, the plaintiffs' UCL, civil rights and extortion

2   claims arose from letters demanding that class members cease pirating satellite

3   television.  *Id.* at 910.  The plaintiffs' claims had no probability of success because

4   the demand letters were protected by California's litigation privilege.  *Id.* at 911.

5   Moreover, their claims would not affect their right to access satellite television

6   and would not protect others from demand letters.  *See id.* at 914-15.  Here,

7   however, Plaintiffs' action, if successful, would enforce Due Process rights to

8   notice and equal protection and would help establish that automated traffic camera

9   contractors must follow Section 21455.5(b)'s warning notice requirements.  The

10  proposed class would benefit from restitution.  The general public would benefit

11  because other municipalities and their traffic camera contractors would be more

12  likely to follow the law.

### 3.   Private Enforcement Is Necessary and Plaintiffs' Personal Stakes Are Low

15      Private enforcement is necessary if defendants fail to comply with the law.

16  *See N. California Carpenters Reg'l Council v. Warmington Hercules Assocs.*, 124

17  Cal. App. 4th 296, 301 (2004).  It is undisputed that Redflex Defendants failed to

18  comply with the law.  Indeed, the Appellate Division of the Orange County

19  Superior Court twice held that Defendants' warning notice period was unlawful.

20  (FAC ¶ 46, 48.)  Thus, Redflex Defendants should not have issued citations or

21  retained fees until proper warning notice periods were instituted at all intersections

22  with automated traffic camera systems.  Redflex Defendants have not returned the

23  fees they unlawfully collected.

24      Furthermore, Plaintiffs' stakes in the matter are disproportionate to the

25  potential financial burden of the litigation because both Plaintiffs seek, at most,

26  approximately $400 in restitution.  Plaintiffs have spent, and will continue to

27  spend, considerable time and resources prosecuting this action.  Among other

28  things, Plaintiffs retained counsel, and both Plaintiffs likely will have to submit to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

1  deposition, respond to discovery requests and spend time communicating with

2  their counsel about the action and its status.

3    **C.    The Anti-SLAPP Statute Is Inapplicable Because Plaintiffs'**

4        **Claims Arise From Redflex Defendants' Commercial Conduct**

5    Assuming still that Redflex Defendants could somehow make a *prima facie*

6  showing that Plaintiffs' claims arise from Redflex Defendants' protected speech,

7  the anti-SLAPP statute would be inapplicable for yet another reason.  Plaintiffs'

8  claims arise from Redflex Defendants' commercial speech to its customer, the

9  City of Santa Ana.

10    The Anti-SLAPP statute does not apply to any cause of action if (1) it was

11  brought against a person primarily engaged in the business of selling services;

12  (2) the statement or conduct giving rise to the cause of action consists of

13  representation of fact about that person's business operations or services; (3) the

14  statement or conduct was made in the course of delivering the person's services;

15  and (4) the intended audience of the statement or conduct was a customer.  *See*

16  Cal. Code Civ. Proc. § 425.17(c)(1)-(2).  Redflex Defendants are primarily

17  engaged in selling automated traffic camera services to the City of Santa Ana.

18  Assuming that Plaintiffs' claims somehow arise from the videos and photographs,

19  the videos and photographs are representations of fact about Redflex Defendants'

20  services.  Redflex Defendants not only provided photographs and video, but also

21  retrieved corresponding DMV ownership information.  Thus, they represented that

22  their services were accurate.  Finally, the audience was Redflex Defendants'

23  customer, the City of Santa Ana.

24  **IV.    CONCLUSION**

25    Plaintiffs' action is not a SLAPP suit because Plaintiffs' claims arise from

26  the issuance of unlawful citations, not from any videos or photographs that

27  Redflex Defendants provided to City Defendants.  Even if Redflex Defendants'

28  somehow made a prima facie showing that Plaintiffs' claims arose from protected

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   speech, Plaintiffs' claims have merit and will succeed and fall within the public

2   interest and commercial speech exceptions.  Therefore, Redflex Defendants'

3   Motion to Strike must be denied.

4

5   Dated:  November 22, 2010                Respectfully submitted,

6                                            Initiative Legal Group APC

7

8                                    By:/s/Mark P. Pifko
                                         Gene Williams
9                                        Mark P. Pifko
                                         Theodore O'Reilly
10

11                                       Aaron D. Aftergood
                                         The Aftergood Law Firm
12

13                                       Attorneys for Plaintiffs Robert Plumleigh
                                         and Thomas R. Hazard III
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S DEMURRER TO THE FIRST AMENDED COMPLAINT